SYLVESTER BRANTLEY,

      Petitioner,

                    **Case No. 8:11-CV-1750-T-33EAJ**
                    **8:09-CR-132-T-33EAJ**

UNITED STATES OF AMERICA,

      Respondent.

_____/

## O R D E R

This cause comes on for consideration of Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (CV-D-1; CR-D-49).

By way of background, Petitioner was charged in an Indictment with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e), and possessing crack cocaine in violation of 21 U.S.C. § 844(a). Petitioner was represented by attorneys Maria Guzman and Dionja Dyer of the Office of the Federal Public Defender. Petitioner entered into a written plea agreement to Count One of the Indictment. On January 14, 2010, the Court sentenced Petitioner to a term of imprisonment of 180 months, the minimum mandatory sentence, to be followed by a 60 month term of supervised release. Petitioner did not appeal.

On August 2, 2011, Petitioner filed his § 2255 motion. Petitioner alleged that his counsel was ineffective in failing to honor his request to file an appeal. He further asserted that he is actually innocent of the armed career criminal enhancement and that his counsel was ineffective in failing to object to the enhancement.

Petitioner stated in his memorandum that he "asked fervently that his acting counsel timely submit a notice of appeal for Eleventh Circuit review of his Armed Career Offender enhancement issues." (D-2, p. 11.) In his affidavit, he stated that he called counsel after his sentencing and told her he wished to appeal his armed career criminal enhancement. (Cv-D-2-1, ¶7.) While he stated in his memorandum that his counsel said she did not see meritorious grounds but that she would proceed with his request (D-2, p.11), in his affidavit he stated that she told him she would "look into it." (Cv-D-2-1, ¶7.) Petitioner contended that he eventually realized no appeal had been filed. According to Petitioner, he did not receive his case file from his counsel until January 24, 2011, three days after the expiration of the time by which to file his § 2255 motion. (D-2-1, ¶9.)

Given Petitioner's contentions, by order dated October 4,

2011, the Court found an evidentiary hearing was appropriate regarding Petitioner's claim of ineffective assistance in failing to file an appeal and his claim of due diligence. The Court deferred ruling on the remaining claims until the evidentiary hearing was concluded.

The Court appointed attorney Robert Tager to represent Petitioner at the hearing. The Court held the evidentiary hearing on November 18, 2011. AFPD Maria Gumzan testified on behalf of the Government. Petitioner testified on his own behalf.

### TESTIMONY PRESENTED AT THE HEARING

AFPD Maria Guzman testified that she has a total of 26 years of experience practicing law and has worked as an Assistant Federal Public Defender for the Middle District of Florida for ten years. She estimated that she had represented more than 1,000 clients to date. AFPD Guzman explained that, at the time she represented Petitioner, she was a supervisor for the Tampa Division Office. As a result of her supervisory responsibilities, she had a lesser caseload and probably had about forty to fifty clients at that time.

Guzman explained that she was not a "big believer" in written plea agreements because of the standard appellate

waiver provision. She explained that it is a standard provision in all Middle District of Florida plea agreements and that only once in ten years had one of her client's received a written plea agreement without such a provision. Guzman testified that her practice is to tell a client that if he enters into a written plea agreement, he gives up his right to appeal except in very limited circumstances "that never will occur," so he is in essence giving up his right to appeal.

Guzman explained that Petitioner was an armed career criminal facing a mandatory minimum sentence of 15 years. She said it is difficult to tell a client to plead to 15 years. She explained that the case was originally set before District Judge Covington. Guzman warned Petitioner that it was not Judge Covington's practice to give low end sentences and that if Petitioner pled, he may receive a sentence higher than the mandatory-minimum term of imprisonment of 15 years. Guzman testified that she told Petitioner if he decided to proceed to trial, he may still get a sentence of 15 years, but he would have preserved his right to appeal. According to Guzman, Petitioner originally decided to proceed to trial, and Guzman assigned an investigator to the case.

Guzman explained that the trial was eventually set before the Undersigned. Thereafter, Guzman met with Petitioner and told him she felt a 15-year sentence might be more likely if he pled guilty. Also, the prosecution told Guzman that cooperation would be possible if Petitioner executed a plea agreement. Guzman therefore told Petitioner he could try to get a sentence of less than 15 years if he cooperated with law enforcement.

Guzman reviewed the plea agreement with Petitioner and explained to him that it is a contract between the parties, but that the Court is not a party. In her view, the only positive about the plea agreement was the cooperation paragraphs coupled with the prosecutor's position that she would not consider cooperation without a plea agreement. Guzman explained that the only reason Petitioner entered into the plea agreement was so he could cooperate in an attempt to get lower than a 15-year sentence through a substantial assistance motion filed on his behalf under U.S.S.G. 5K1.1 or Fed.R.Crim.P. 35.

Guzman recalled that she represented Petitioner at the first sentencing hearing in December 2010. At the hearing, she asked for a continuance of the sentencing proceedings

because she felt that the ATF agents had been "less than enthusiastic" about pursuing cooperation with Petitioner. She asked for additional time so Petitioner could attempt to get a substantial assistance motion. Her request was granted, and thereafter Guzman wrote Petitioner telling him to continue to cooperate.

Prior to the second sentencing hearing, Guzman conversed at length with Petitioner as to his options. She told Petitioner that she could file a motion to withdraw the guilty plea as the Government had not abided by the cooperation agreement. She explained to Petitioner that if such a motion were granted, he would have a trial. Guzman said Petitioner told her he did not want to go to trial. Guzman explained to him if he was sentenced based on the plea agreement and received a sentence of 15 years, he would have nothing to appeal because that was the mandatory minimum sentence and that such an appeal would go nowhere.

Guzman recalled that AFPD Dionja Dyer represented Petitioner at second sentencing hearing. Petitioner received the mandatory minimum 15-year sentence. Guzman testified that Petitioner did not receive a 5K motion at sentencing, but Petitioner was still cooperating so there was a possibility

for a Rule 35 motion to be filed at a later date.

Guzman explained that she didn't want Petitioner's cooperation efforts to be stalled after sentencing so, on January 21 or 22, 2010, Guzman sent an investigator to the jail to get all the necessary information from Petitioner. Guzman then sent a memorandum to the Government along with a handwritten list of names and asked that Petitioner's cooperation not fall by the wayside. The prosecutor sent Guzman a copy of a letter she sent to law enforcement along with the information from Guzman.

Guzman thoroughly explained how she keeps all correspondence, notes, and memos in the case files. She said there was no correspondence in the file indicating Petitioner wanted to appeal. Guzman was adamant that Petitioner did not call her after sentencing regarding an appeal. She said such a call absolutely would have been documented in the file. Guzman testified that if Petitioner had called and told someone other than her that he wanted to appeal, it would have been made known to Guzman. Guzman further testified that the normal procedure is for the Office to file an appeal when a client so requests, regardless of any waiver. She stated that, in this instance, before filing a notice of appeal, she

would have first met with Petitioner to explain to him that he would likely lose any chance at a Rule 35 motion being filed on his behalf if he filed an appeal. Guzman, however, reiterated that she had several conversations with Petitioner about an appeal both before and after he executed a plea agreement and that Petitioner never indicated that he wanted to appeal. Guzman said that she would not have had Petitioner sign a plea agreement had he wanted to appeal.

Guzman explained that on March 1, 2010, a closeout letter was sent to Petitioner at the Pinellas County Jail. This letter provided in part:

> Enclosed is a copy of Judgment in your Criminal case. You have indicated you do not wish to appeal your sentence and I agree with your decision. All matters have now been completed that were covered under the Order of Appointment of this office in your case. My ability to represent you under this Order has ended. I can no longer represent you without further order of the court and the file in your case will be closed.

(GX 2.) Guzman testified that if Petitioner was no longer at the jail, the letter would have been returned to the FPD Office and it would be have been resent to Petitioner at his new address.

Petitioner Sylvester Brantley testified that he didn't speak to either AFPD Guzman or AFPD Dyer after sentencing.

According to Petitioner, when he returned to the jail after sentencing, a jailhouse lawyer told him to appeal. Petitioner testified that he then phoned Guzman two to three days after sentencing. Petitioner testified that he talked to Guzman personally and told her he wanted to appeal. According to Petitioner, Guzman told him she didn't know if he had any grounds, but she would do it. Petitioner explained to the Court that he felt he had grounds to appeal under Booker.

Petitioner testified that he never received any correspondence from the FPD Office. Petitioner said after sentencing he was moved to Citrus County Jail and then transported to prison. Petitioner said he met another jailhouse lawyer in prison in August 2010, but that he did not discuss his case with him at that time.

According to Petitioner, in November 2010, he spoke with the jailhouse lawyer about his case and said he hadn't heard anything about the appeal. He then attempted calling Guzman three to four times in Tampa, but was told she was in meetings and was eventually told she had transferred to the Orlando office. When Petitioner reached Guzman in Orlando and inquired of her about the appeal, she said she didn't file one. According to Petitioner, this was the first time he

realized no appeal had been filed.

Petitioner testified that on January 2, 2011, he called Guzman asking for his paperwork. He said he received the file on January 24, 2011, but he complained that she did not send all of the file.[1] He then had a jailhouse lawyer prepare his § 2255 motion.

Petitioner denied knowing about the appellate waiver provision in the plea agreement. He testified that no one ever discussed the waiver provision with him. On cross-examination, he admitted that the Court had reviewed the provision with him at his guilty plea. Petitioner, however, said he was "just listening too fast, I was just ready to sign."

**THE COURT'S CREDIBILITY FINDINGS**

After hearing the testimony of Petitioner and AFPD Guzman, observing their demeanor, and taking into account the witnesses' interests in the outcome of these proceedings, the Court finds the entirety of Petitioner's testimony is not credible and fully credits the testimony of Guzman.

First, Petitioner's testimony that he was unaware of the

---

[1] The Court notes that neither the change of plea hearing nor the sentencing hearings were transcribed at the time Petitioner requested his file from Guzman. These hearings were not transcribed until after Petitioner filed his § 2255 motion. (See Cr-D-52, 54, and 55.)

appellate waiver provision and that no one ever discussed it with him is contradicted by other evidence in the record. At his guilty plea hearing, the Court specifically addressed the appellate waiver provision and Petitioner confirmed that he had discussed the provision with his attorney and that he understood it. (Cr-D-52, p. 21-23.) Furthermore, at the December 1, 2009 sentencing hearing at which Petitioner was present, AFPD Guzman spoke about the appellate waiver provision on three occasions. First, in requesting a continuance so that Petitioner could provide further cooperation, explained that "Mr. Brantley signed a plea agreement waiving his appellate rights ...." (Cr-D-54, p. 3.) Guzman further stated, "there's also a good faith element of a plea agreement wherein law enforcement should actively pursue any information provided by a defendant who has waived his rights to appeal and his rights to trial in a plea agreement." (Id. at p. 5.) Finally, Guzman reiterated, "My concern is that I do not believe that during the pendency of this case enough legwork was done to get to that position at sentencing and I think that that prejudices him in lieu of the fact that he has given up his right to appeal by way of a plea agreement." (Id. at p. 8.)

11

Furthermore, Petitioner's actions after January 2010, do not support his testimony that he asked Guzman to file an appeal. At no time after January 2010, until sometime in November 2010 did Petitioner inquire of Guzman as to the status of his appeal. Even after allegedly learning in November 2010 that no appeal had been filed, Petitioner waited until January 2011 to request his file from Guzman. Furthermore, Petitioner waited nearly 18 months after his sentencing, and nine months after allegedly learning no appeal had been filed to file a § 2255 motion raising the failure to file an appeal.

Moreover, Petitioner admitted that he has been untruthful in the past. He admitted providing a false name at the time of his arrest in this case. Additionally, his Presentence Investigation Report indicates that he has provided false names to law enforcement on numerous other occasions.

On the other hand, AFPD Guzman appeared completely credible at the hearing. Guzman is an experienced attorney who has been practicing law for approximately 26 years. Ten of those years Guzman has practiced as an Assistant Federal Public Defender in the Middle District of Florida. Guzman testified that it is her practice to file an appeal when her

client so requests, even when an appellate provision in the plea agreement precludes an appeal. Guzman testified that at no time did Petitioner say he wanted to appeal. She said if he had told her he wanted to appeal, she never would have had him enter into the plea agreement. Furthermore, Guzman testified that had he wanted to appeal after sentencing, she would have met with him first to explain to him that an appeal would jeopardize his chances at a Rule 35. There is simply no credible evidence that Guzman would not have filed an appeal had Petitioner requested him to do so. Also, Guzman's testimony is supported by the March 1, 2010 letter confirming her understanding that Petitioner did not wish to appeal his conviction and sentence. (GX 2.)

Having assessed the credibility of the witnesses, the Court now turns to the issues presented in Petitioner's Motion.

## I. PETITIONER'S MOTION IS UNTIMELY

The threshold question is whether Petitioner filed his § 2255 motion in a timely manner. Petitioner concedes that his § 2255 motion was not filed within one year of his conviction becoming final.

He argues that his motion is nonetheless timely under 28

U.S.C. §2255(4) because he filed his motion within a year of learning that no appeal had been filed. The Court has already rejected Petitioner's testimony that he did not learn that no appeal had been filed until November 2010. Furthermore, Petitioner fails to recognize that pursuant to § 2255(4), the one-year limitation period starts to run "when the facts *could have been discovered* through the exercise of due diligence, not when they were *actually* discovered." Aron v. United States, 291 F.3d 708, 711 (11th Cir. 2002).

There is no credible evidence that Petitioner requested AFPD Guzman to file an appeal. Guzman testified credibly that she discussed the matter of appeal with Petitioner on several occasions and at no time did he ever say he wanted to appeal. As such, § 2255(4) does not appear applicable to this situation. Specifically, the facts supporting Petitioner's claim of ineffective assistance of counsel were discoverable when Petitioner and Guzman spoke and she advised him an appeal would be meritless. Petitioner knew both prior to and after his January 2010 sentencing that no appeal would be filed.

Assuming, at best, Petitioner had a unilateral expectation of an appeal, Petitioner has not met his burden of demonstrating that he acted with due diligence as required by

§ 2255(4). Petitioner admits that he made no effort to contact Guzman from January 2010 to November 2010, ten months after his sentencing. Nor is there any evidence that Petitioner attempted to contact the Clerk's Office by telephone or in writing to request the case number or status of his appeal or the Court regarding the status of his appeal. The Court therefore finds Petitioner's motion is untimely under § 2255(4) as well.

Additionally, equitable tolling is not appropriate in this instance as Petitioner has failed to meet his burden of demonstrating the existence of extraordinary circumstances beyond his control which made it impossible for him to timely file his motion. See Akins v. United States, 204 F.3d 1086, 1090 (11th Cir.), cert. denied, 531 U.S. 971 (2000). Also, Petitioner's lack of diligence prevents the application of equitable tolling. Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999) ("[e]quitable tolling is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence.").

As Petitioner's motion is untimely, it is due to be dismissed. Even if it were timely, for the reasons stated

below, Petitioner still would not be entitled to any relief.

## II.  FAILURE TO FILE AN APPEAL

In Roe v. Flores-Ortega, 528 U.S. 470 (2000), the Supreme Court addressed the factors to be considered in determining whether an attorney's failure to file a notice of appeal constitutes ineffective assistance.  First, the Court held that the test set forth in Strickland applies to such cases in which the defendant must show:  (1) "that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant."  Flores-Ortega, 528 U.S. at 476-77. The Supreme Court explained that a lawyer who disregards his client's specific instructions to file a notice of appeal is per se deficient, and the defendant is entitled to a belated appeal without a showing that the appeal would likely have merit.  Id. at 477.  Significantly, however, where a client instructs his lawyer not to file an appeal, a lawyer cannot be found deficient for failing to file an appeal.  Id.  ("a defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently), citing Jones v. Barnes, 463 U.S. 745, 751 (1983).

Flores-Ortega specifically addressed the issue of whether counsel is deficient for failing to file an appeal when the defendant has not clearly conveyed his wishes one way or another. Id. Pursuant to Flores-Ortega, the court must first determine whether counsel consulted with the defendant about an appeal. Id. at 478. If so, "counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." Id. "[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Flores-Ortega, 528 U.S. at 477 (citation omitted).

Where a defendant has not clearly conveyed his wishes regarding an appeal one way or another, the court must then determine whether counsel consulted with the defendant about an appeal. Id. at 478. To "consult" means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Id. Where an attorney has consulted with the defendant about an appeal, "counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an

appeal." Id.

Where counsel has not consulted with a defendant about an appeal, the court must then determine whether counsel had a constitutionally imposed duty to consult. The duty to consult regarding an appeal is constitutionally imposed where there is reason to think either (1) "that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480.

The Court finds that, based on the credible testimony of AFPD Guzman, at no time did Petitioner ever express to Guzman a desire to appeal nor did he ever specifically request or direct Guzman to file an appeal. The Court also finds that Guzman fulfilled her constitutional duty to consult with Petitioner regarding an appeal and that Guzman consulted with Petitioner regarding an appeal on multiple occasions. She explained to him that by entering a plea agreement he was giving up his right to appeal except in very limited circumstances. Furthermore, when Guzman felt that law enforcement had not made an effort to meet with Petitioner regarding cooperation, she advised Petitioner that she could

move to withdraw the plea, proceed to trial, and appeal thereafter. Petitioner advised he did not want to follow that course of action.

In light of the foregoing, the Court finds that Guzman's representation of Petitioner did not fall below an objective standard of reasonableness. See Strickland v. Washington, 466 U.S. 668 (1984). Guzman did not disregard an express instruction from Petitioner to file a notice of appeal, and she fulfilled her constitutional duty to consult with Petitioner regarding an appeal and determine her client's wishes. The Court is satisfied that defense counsel fully performed in accordance with her obligations under the law. Therefore, Petitioner's claim of ineffective assistance of counsel for failing to file an appeal must be denied.

## III. ACTUAL INNOCENCE AND INEFFECTIVE ASSISTANCE OF COUNSEL REGARDING THE ARMED CAREER CRIMINAL ENHANCEMENT

Petitioner next argues his counsel was ineffective in failing to challenge the armed career criminal enhancement. He also claims he is actually innocent of the enhancement. In this regard, he claims his Florida drug convictions are not "serious drug offenses" and that the drug convictions that made up the enhancement are unconstitutional under Shelton v.

<u>Secretary, Dept. of Corrections</u>, --- F.Supp.2d ----, 2011 WL
3236040 (M.D. Fla. July 27, 2011).

Petitioner was sentenced as an armed career criminal
based on his prior convictions for sale of cocaine, aggravated
assault, and breaking and entering and felonious larceny.
Under the ACCA, a defendant with three prior convictions for
a violent felony or serious drug offense shall be imprisoned
for not less than 15 years. 18 U.S.C. § 924(e)(I).

Petitioner has not demonstrated that his counsel was
ineffective in failing to challenge the ACCA enhancement; nor
has he shown that he is actually innocent of the enhancement.
Specifically, Petitioner has three felony convictions from
North Carolina for felonious breaking and entering. Any
argument that these prior convictions for breaking and
entering do not qualify as predicate offenses for ACCA is
meritless under <u>United States v. Thompson</u>, 588 F.3d 197 (4th
Cir. 2009), <u>cert.</u> <u>denied</u>, --- U.S. ----, 130 S.Ct. 1916
(2010).

Petitioner also has two prior Florida drug convictions
including a 1999 Florida conviction delivery of cocaine, and
a Florida conviction for delivery of cocaine within 1,0000
feet of prohibited property in 2004. Section 924(e) defines

20

"serious drug offense" as either a federal drug offense punishable by a maximum term of 10 years' imprisonment or longer, or "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance," also punishable by a maximum term of 10 years' imprisonment or longer. 18 U.S.C. § 924(e)(2)(A). Sale or delivery of cocaine both qualify as serious drug offenses for purposes of ACCA. United States v. Pitts, 394 Fed. Appx. 680, 683-84 (11th Cir. 2010) (sale or delivery of cocaine in violation of Florida law constitute serious drug offense for ACCA purposes); United States v. Adams, 372 Fed. Appx. 946, 950-51 (11th Cir.) (violation of Fla. Stat. § 893(1)(a) making it unlawful to possess with the intent to sell, manufacture, or deliver a controlled substance is a serious drug offense), cert. denied, 130 S.Ct. 3527 (2010); United States v. Hodges, 186 Fed. Appx. 959, 962 (11th Cir. 2006) (possession of cocaine with intent to sell qualifies as a serious drug offense).

Petitioner's reliance on United States v. Sanchez, 586 F.3d 918 (11th Cir. 2009) and Shelton is misplaced. Sanchez involved a sentence enhancement under 18 U.S.C. § 3559(c)

rather than the ACCA. As such, it is not applicable here.

In Shelton, the court concluded that Florida Statute section 893.13 is facially unconstitutional. 2011 WL 3236040, at *5-7. The Shelton decision does not afford Petitioner relief, however. A federal criminal defendant cannot challenge his prior state convictions which are the underlying basis to enhance his sentence absent a showing that the state conviction was obtained in violation of the right to counsel. Custis v. United States, 511 U.S. 485 (1994); Johnson v. United States, 544 U.S. 295, 303 (2005). Prior to a state court conviction being vacated, a collateral attack on a federal sentence enhanced by a state court conviction is not permissible. See Custis., 511 U.S. at 497. At this point, neither state conviction has been overturned, and Petitioner does not contend that he lacked counsel at the state sentencing proceedings. As such, he is not entitled to the relief he seeks. Rather, he must return to the state court to obtain relief there before this Court can grant any relief.

IT IS therefore ORDERED that:

(1) Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (CV-D-1, CR-D-) is DENIED.

(2)  The Clerk is directed to enter judgment in favor of the Government and CLOSE the civil case file.

## CERTIFICATE OF APPEALABILITY AND

## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHERED ORDERED that Petitioner is not entitled to a certificate of appealability.  A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability (COA).  Id.  "A [COA] may issue … only if the applicant has made a substantial showing of the denial of a constitutional right."  Id. at § 2253(c)(2).  To make such a showing, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these

circumstances. Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in _forma_ _pauperis_.

DONE AND ORDERED at Tampa, Florida this ___5th___ day of December, 2011.

_[signature]_

WILLIAM J. CASTAGNA
SENIOR UNITED STATES DISTRICT JUDGE